# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP ANDREW MEIGHAN,** | : | CIVIL NO. 1:16-CV-2560 |
| | : | |
| Petitioner, | : | (Judge Kane) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **MARY SABOL, et al.,** | : | |
| | : | |
| **Respondents** | : | |

## REPORT AND RECOMMENDATION

### I.      Statement of Facts and of the Case

This case involves a habeas corpus petition filed by an immigration detainee and previously convicted drug trafficker, Philip Meighan. Meighan is a citizen and native of Belize who entered the United States unlawfully without inspection by an immigration officer, and was convicted of conspiracy to distribute PCP in August of 2007. (Doc. 7, Exs. 1 and 2.) Following this conviction, on June 23, 2009, immigration officials issued a Notice of Intent to Issue a Final Administrative Removal Order which charged that Meighan was subject to removal from the United States due to his prior drug trafficking conviction.(Id., Ex. 2.) In February of 2016, immigration officials took Meighan into custody following the completion of his criminal sentence (Doc. 1.) After a series of administrative proceedings before an Immigration Judge, on

1

January 10, 2017, Meighan was ordered removed, but the Immigration Judge granted Meighan withholding of removal under the Convention Against Torture, and the Government has elected not to further challenge this order. ( Doc. 7, Ex 5.) The practical import of this action is that Meighan is now subject to a final order of removal under the Immigration and Naturalization Act, but may not be removed to Belize, his nation of origin, due to the Convention Against Torture finding. Meighan may, however, be removed to any other nation which is willing to accept him. See generally Madjakpor v. Gonzales, 406 F.3d 1040, 1042 (8th Cir. 2005).

While these proceedings were on-going, on December 29, 2016, Meighan filed a petition for writ of habeas corpus with this court, seeking release from immigration custody. Meighan also filed a motion for preliminary injunction, (Doc. 3), which sought extraordinary relief in the form of an order directing his forthwith release from immigration custody. The Respondents have addressed this petition, and motion for preliminary injunction, (Doc. 7), and this case is now ripe for resolution.

Given the present status of these proceedings, which involve an alien who is now subject to a final order of removal entered in January of 2017, we find that the current, brief period of post-removal detention does not violate due process and therefore recommend that the Court deny this petition at this time without prejudice to renewal of this claim, if warranted, at an appropriate future time. We also find that Meighan has

not made the exacting showing that is necessary to secure a preliminary injunction directing his release from custody and recommend that his motion for preliminary injunction be denied.

## II. Discussion

### A. Meighan's Current Post-Removal Detention Does Not Raise Constitutional Concerns

In this case, Meighan's order of removal became final in January of 2017, when he was ordered removed but had his removal deferred under the Convention Against Torture. As an alien who is now subject to a final order of removal, the petitioner's detention is governed by a set of specific statutory and constitutional rules. First, by statute, aliens like the petitioner, who are subject to final removal orders, may be detained under 8 U.S.C. § 1231(a), which directs the Attorney General to remove such aliens within 90 days of the entry of a removal order. 8 U.S.C. § 1231(a)(1)(A). The statute then commands that "[d]uring the removal period the Attorney General shall detain the alien", 8 U.S.C. § 1231(a)(2), and with respect to criminal aliens like the petitioner specifically provides that: "Under no circumstance during the removal period shall the Attorney General release an alien who has been found ...deportable under section 1227(a)(2) ... of this title." 8 U.S.C. § 1231(a)(2). For purposes of our analysis of any post-final order period of detention, this statutory ninety-day "removal period" during which detention is mandatory begins on the date the order of removal

becomes administratively final, in this case January of 2017. See 8 U.S.C. § 1231(a)(1)(B)(I).

In the instant case, Meighan has currently been held for approximately 40 days since his removal order became administratively final, a term of post-final order of removal detention which is not only authorized by law, but is actually compelled by the statute. 8 U.S.C. § 1231(a)(2). While this detention is expressly authorized by statute, aliens, like Meighan, who are the subject of final removal orders are also entitled to certain due process protections. For aliens awaiting removal, like the petitioner, the contours of those due process rights are defined by the United States Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001). In Zadvydas, the United States Supreme Court extended due process protections to aliens awaiting removal from the united States, while generally sustaining the validity of the initial mandatory detention period for such aliens during the ninety-day removal period prescribed by 8 U.S.C. § 1231(a)(1)(A). Beyond this initial 90-day period the Court concluded that: "we think it practically necessary to recognize some presumptively reasonable period of detention." Id. at 701.

The Court then observed that:

While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more

than six months . . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

Taken together, 8 U.S.C. § 1231(a)(1)(A) and Zadvydas create a statutory and constitutional framework for protecting the rights of aliens who are detained pursuant to administratively final removal orders. Under this framework, such aliens shall be detained for the first 90 days of the removal period and further detention beyond this 90-day period will be presumed reasonable up to a period of 6 months, at which time aliens subject to final removal orders must either be removed, or be given bail consideration.

However, when calculating these detention periods for purposes of analyzing post-removal delay claims brought by immigration detainees two principles must be kept in mind. First, delays attributable to the recalcitrance of the immigration detainee, and his refusal to cooperate with immigration officials, are not to be considered by the courts in making these determinations regarding whether a detainee has experienced

excessive delays in deportation. Thus, where an alien refuses to cooperate with the authorities in affecting his removal he cannot cite the delay in removal which he caused as grounds for habeas relied. As this court has observed:

> [A]n "alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the INS's efforts to remove him." Pelich v. I.N.S., 329 F.3d 1057, 1061 (9th Cir.2003). In [such] a case, the Court[s] determined that the continued detention of the alien was due to his own conduct: . . . Thus, the [court] has interpreted INA § 241(a)(1)(C) after Zadvydas to permit continued detention of a removable alien "so long as the alien fails to cooperate fully and honestly with officials to obtain travel documents." Lema v. INS, 341 F.3d 853, 857 (9th Cir.2003). Similarly, district courts to consider this issue ask whether the petitioner has the "keys to his freedom," Pelich, 329 F.3d at 1060, to determine whether he is preventing his own removal pursuant to INA § 241(a)(1)(C). See, e.g., Clark v. Ashcroft, No. 03-3320, 2003 WL 22351953 at *3-4 (E.D.Pa. Sept. 16, 2003)(alien initially misrepresented his country of origin, but later gave his true name and identity; the government showed no evidence of non-cooperation since that time); Rajigah v. Conway, 268 F.Supp.2d 159, 165-66 (E.D.N.Y.2003) (finding no bad faith failure to cooperate where alien made truthful statements to Guyanese ambassador regarding his intent to file another court action, which the government considered failure to comply); Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37, 51-53 (D.D.C.2002) (alien's truthful statements to Liberian officials that he did not wish to return to Liberia did not amount to bad faith failure to cooperate since it was not the reason for failure to issue travel documents; rather, it was their concern for his lack of ties to that country); Powell v. Ashcroft, 194 F.Supp.2d 209, 210 (E.D.N.Y.2002) (repeated inconsistencies regarding alien's identity "demonstrably hampered the INS in carrying out his removal"). Thus, this Court must carefully examine the record to determine Petitioner's part in his continued detention.

Abdel-Muhti v. Ashcroft, 314 F.Supp.2d 418, 427-28 (M.D.Pa.,2004).

In addition, cases construing Zadvydas recognize that the presumptively

6

reasonable six-month detention period described by the Supreme Court is just that–a presumptively reasonable period of detention. It is not an ironclad time frame within which aliens must be removed, or released. Moreover, echoing the Supreme Court's observation that "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months," id. at 701, courts have concluded that an alien who has been held longer than six months awaiting removal still bears an initial burden of proof to secure release pending removal. In such instances, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002). See, e.g., Rodney v. Mukasey, 340 F. App'x 761, 764 (3d Cir. 2009); Encarnacion-Mendez v. Attorney General, 176 F. App'x 251, 254 (3d Cir. 2006); Joseph v. United States, 127 F. App'x 79, 81 (3d Cir. 2005).

In instances where an alien is unable to produce evidence demonstrating good cause to believe that there is no significant likelihood of removal in the reasonably foreseeable future, courts have frequently sustained continuing periods of detention pending removal well beyond the six-month time frame described as presumptively reasonable by the Supreme Court in Zadvydas, reasoning consistent with Zadvydas that: "[t]his 6-month presumption, . . ., does not mean that every alien not removed

must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. See, e.g., Joseph v. United States, 127 F. App'x 79 (3d Cir. 2005) (11 months); Sun v. Holder, No. 10-2186, 2010 WL 5391279 (M.D. Pa. Dec. 22, 2010)(10 months); Joseph v. Lowe, No. 10-1222, 2010 WL 3835872 (M.D. Pa. Sept. 24, 2010) (10 months); Boyce v. Holder, 09-2254, 2010 WL 817482 (M.D. Pa. March 9, 2010)(18 months); Robinson v. District Director, No. 09-637, 2009 WL 3366439 (M.D. Pa. Oct. 19, 2009) (1 year); Brown v. Attorney General, No. 09-313, 2009 WL 2225431 (M.D. Pa. July 23, 2009) (10 months); Aishrat v. Mukasey, No. 08-786, 2008 WL 3071003 (M.D. Pa. Aug. 1, 2008) (10 months); Cyril v. Bureau of Immigration and Customs Enforcement, No. 05-2658, 2006 WL 1313857 (M.D. Pa. May 11, 2006) (10 months); Nma v. Ridge, 286 F.Supp.2d 469 (E.D.Pa. 2003)(11 months).

While this legal framework affords substantial protections to aliens who are subject to final removal orders, application of these legal standards to this case provides no grounds for affording habeas relief to the petitioner at this time. Meighan's removal order became final in January of 2017. Thereafter, he has been subject to the first 90-day mandatory detention period set by statute, 8 U.S.C. § 1231(a)(2), and his post-removal detention falls well within the 6-month presumptively reasonable time frame defined by the Supreme Court in Zadvydas. Further, Meighan has not

"provide[d] evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002), an essential element of any post final order of removal claim for federal habeas corpus relief.

Therefore, on these facts we find that Meighan simply has not made a valid claim that he has been subjected to an unconstitutionally excessive period of post-removal delay. Indeed, far from being unconstitutionally excessive, the current post-removal detention falls within periods sanctioned by statute and by the Supreme Court. Therefore, this brief detention does not raise concerns of constitutional dimension warranting habeas relief at this time. See Hendricks v. Reno, 221 F. App'x 131 (3d Cir. 2007)(affirming denial of habeas petition where court found delay from date of administratively final deportation order was less than 3 months); Faustov v. Napolitano, No. 1:13-CV-1018, 2013 WL 3474766, at *1 (M.D. Pa. July 10, 2013); Tavares v. Decker, No. 1:13-CV-20, 2013 WL 1246803, at *9 (M.D. Pa. Mar. 5, 2013), report and recommendation adopted, No. 1:13-CV-0020, 2013 WL 1246802 (M.D. Pa. Mar. 26, 2013); Brandao v. Dist. Dir. for Immigration & Customs Enf't, No. CIV. 4:09-CV-1837, 2009 WL 3698021, at *10 (M.D. Pa. Nov. 3, 2009). Of course, should any future continuing detention exceed the presumptively reasonable limits prescribed by the Supreme Court in Zadvydas, Meighan would be entirely free to seek habeas corpus relief at that time.

Given this recommendation regarding denial of Meighan's federal habeas corpus petition on its merits, we also recommend that the petitioner's motion for preliminary injunction (Doc. 3) also be denied. *Pro se* pleadings, like those filed here, which seek extraordinary, or emergency relief, in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure and are judged against exacting legal standards. As the United States Court of Appeals for the Third Circuit has explained: "Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994) (quoting SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1254 (3d Cir. 1985)). See also Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 170-71 (3d Cir. 2001); Emile v. SCI-Pittsburgh, No. 04-974, 2006 WL 2773261, *6 (W.D.Pa. Sept. 24, 2006)(denying inmate preliminary injunction).

A preliminary injunction is not granted as a matter of right. Kerschner v. Mazurkewicz, 670 F.2d 440, 443 (3d Cir. 1982). It is an extraordinary remedy. Given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party. As a threshold matter, "it is a movant's

burden to show that the 'preliminary injunction must be the only way of protecting the plaintiff from harm.' " Emile, 2006 WL 2773261, at * 6 (quoting Campbell Soup Co. v. ConAgra, Inc., 977 F .2d 86, 91 (3d Cir.1992)). Thus, when considering such requests, courts are cautioned that:

> "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis deleted). Furthermore, the Court must recognize that an "[i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case." Plain Dealer Publishing Co. v. Cleveland Typographical Union # 53, 520 F.2d 1220, 1230 (6th Cir.1975), cert. denied, 428 U.S. 909 (1977). As a corollary to the principle that preliminary injunctions should issue only in a clear and plain case, the Court of Appeals for the Third Circuit has observed that "upon an application for a preliminary injunction to doubt is to deny." Madison Square Garden Corp. v. Braddock, 90 F.2d 924, 927 (3d Cir.1937).

Emile, 2006 WL 2773261, at *6.

Accordingly, for an immigration detainee like Meighan to sustain his burden of proof that he is entitled to a preliminary injunction under Fed.R.Civ.P. 65, he must demonstrate *both* a reasonable likelihood of success on the merits, *and* that he will be irreparably harmed if the requested relief is not granted. Abu-Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998); Kershner, 670 F.2d at 443. If the movant fails to carry this burden on either of these elements, the motion should be denied since a party seeking

such relief must "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989)(emphasis in original), (quoting Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987)).

Here, we find that Meighan cannot currently demonstrate that his immigration detention is unlawful. Further, we find that Meighan remains free to seek relief at a future date if the duration of this post-final order of removal detention becomes presumptively excessive. Therefore, he suffers no irreparable harm since he has access to the courts once he suffers a legally cognizable injury in the form of an excessive detention. Finally, we find that the relief sought by Meighan in this motion–a district court order directing his forthwith release–is inappropriate since this initial bail determination can, and should, be made by the Immigration Judge, applying the constitutional benchmarks outlined by the courts. Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 n.12 (3d Cir. 2015). This guidance, in turn, is consistent with other case law in this field, where federal courts have frequently referred these bail questions to Immigration Judges in the first instance. See, e.g., Casas-Castrillon v. Dep't of Homeland Security, 535 F.3d 942 (9th Cir. 2008); Reid v. Donelan, 991 F. Supp. 2d 275 (D. Mass. 2014); Chen v. Aitken, 917 F. Supp. 2d 1013 (N.D. Cal. 2013); Sengkeo v. Horgan, 670 F. Supp. 2d 116 (D. Mass. 2009);

Bourguignon v. MacDonald, 667 F. Supp. 2d 175 (D. Mass. 2009); Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008).

Given these findings, we conclude that Meighan cannot demonstrate a likelihood of success on the merits. Nor can he show an irreparable harm and the relief he seeks in this motion for preliminary injunction is inappropriate. Accordingly, Meighan has not made the showing necessary to secure a preliminary injunction and his motion for preliminary injunction should be denied.

### III.  Recommendation

For the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED without prejudice to renewal at such time, if any, that the delay and detention may become unreasonable and excessive. IT IS FURTHER RECOMMENDED that Meighan has not made the showing necessary to secure a preliminary injunction and his motion for preliminary injunction (Doc. 3) should be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days

after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of February, 2017.

                                          *S/Martin C. Carlson*
                                          Martin C. Carlson
                                          United States Magistrate Judge